IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELVIN F. WALKER | : | CIVIL ACTION |
| | : | |
| v. | : | No. 25-716 |
| | : | |
| PATRICIA WRAY | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                          **May 18, 2026**

Plaintiff Melvin F. Walker, proceeding pro se, brings this action against his deceased father's former next-door neighbor, Defendant Patricia Wray, alleging Wray's actions around the time of his father's death in 2014 and thereafter resulted in the loss of his inheritance. Walker asserts state-law claims for fraud, intentional interference with inheritance, and conversion, as well as a claim pursuant to 42 U.S.C. § 1983 for deprivation of property without due process. Wray has moved to dismiss the Complaint, arguing Walker lacks standing, his claims are time-barred and inadequately pleaded, and he failed to properly serve her with the Complaint and summons. Because all of Walker's claims are subject to dismissal on one or more of the grounds asserted by Wray, the motion to dismiss will be granted. Walker's fraud, intentional interference, and conversion claims will be dismissed in part with prejudice and in part without prejudice as explained below. His § 1983 claim will be dismissed with prejudice.

**BACKGROUND**[1]

---

[1] Except as otherwise specifically noted, the following factual recitation is based on Walker's Complaint and the exhibits thereto, which this Court may consider in evaluating Wray's motion to dismiss. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Complaint and exhibits appear on the docket at ECF No. 2. Citations to "Pl.'s Ex. __" are to the exhibits attached to the Complaint.

Plaintiff Melvin F. Walker is the son of John Allen Murphy, who died more than a decade ago, on May 14, 2014.  Compl. 1-2.  Walker resides in Arlington, Virginia.  *Id.* at 2.  Murphy, at the time of his death, owned a home located at 2444 77th Avenue in Philadelphia, Pennsylvania.  *See id.* at 7.  Defendant Patricia Wray and her husband, Wilbert G. Wray, lived next door to Murphy at 2446 77th Avenue.  *Id.* at 2-3.  Before his death, Murphy paid Wilbert Wray to help out around the house, and both Wilbert and Patricia had access to Murphy's home at all times.  *Id.* at 2.

In April 2011, Murphy executed power of attorney documents designating Walker as agent to act for him in health care and financial matters.  *Id.* at 3; Pl.'s Ex. A.  The power of attorney documents were prepared and provided to Walker by the SeniorLAW Center in Philadelphia.  Pl.'s Ex. A.

According to the Complaint, on May 11, 2014, Patricia Wray "admitted" Murphy to Chestnut Hill Hospital without notifying Walker, even though she knew of Walker's power of attorney and had his contact information.  Compl. 3.  Murphy died at the hospital at 4:45 a.m. on May 14, 2014 due to end stage congestive heart failure and hypotension.  *Id.* at 2; Pl.'s Ex. B.  Wray did not call Walker to inform him his father was in the hospital until around 1:00 p.m. on May 14, 2014, after Murphy had already died.  Compl. 3.  Walker then called the hospital and was told his father had passed and his body had been sent for cremation.  *Id.*

Walker alleges that at the hospital, Wray falsely represented herself as the correct person to contact regarding Murphy's medical condition, signed medical documents as the authorized decisionmaker, authorized end-of-life decisions without legal authority, authorized Murphy's

cremation, and obtained copies of his death certificate for "property transfer purposes."[2] *Id.* He

further alleges that on April 26, 2017, Wray attempted to transfer the deed to Murphy's home using

"fraudulent death documentation," and removed personal property worth $45,000 from the home.

*Id.* Walker cites various exhibits to the Complaint in support of this allegation, but the exhibits

mainly reflect that Murphy's home was fraudulently transferred to an individual named

Christopher Cox Williams after his death. The exhibits include a copy of an allegedly fraudulent

deed transferring "2444 n. 77th Avenue" from Murphy to Williams in exchange for a payment of

$9,000. Pl.'s Ex. E; Pl.'s Ex. F.[3] The deed purports to have been signed by Murphy on April 26,

2017, nearly three years after his death. Pl.'s Ex. E; Pl.'s Ex. F. The deed is accompanied by a

"Philadelphia Real Estate Transfer Tax Certification," signed by Williams on May 4, 2017, which

characterizes the transaction as "a transfer between father and son." Pl.'s Ex. F.[4] The Complaint

---

[2] The Complaint references two exhibits in connection with these allegations—Murphy's death certificate (Exhibit B) and a letter from Chestnut Hill Hospital to Walker dated October 24, 2022 (Exhibit C). Compl. 3. The death certificate lists Wray as the "informant" (i.e., the source of Murphy's personal information) and identifies her relationship to Murphy as "friend." Pl.'s Ex. B. It does not bear Wray's signature, nor does it indicate that Wray made any end-of-life decisions for Murphy. The letter appears to be the Hospital's response to a concern raised by Walker years after his father's death. Pl.'s Ex. C. It notes that after reviewing Murphy's chart and the documentation provided by Murphy upon his admission, hospital staff confirmed that the hospital "did notify the correct persons of his passing." *Id.*

[3] Although the deed is Exhibit F to the Complaint, portions of it appear in Exhibit E.

[4] The exhibits to the Complaint also include City of Philadelphia property tax records for Murphy's home as well for Wray's home next door. The records reflect that the 2444 77th Avenue property was sold to Christopher Cox Williams on April 26, 2017 for $1 and that Wray and her husband purchased the property at 2446 77th Avenue for $56,500 in 1991. Pl.'s Ex. I. The only other exhibit that contains even a possible reference to Wray is a heavily redacted email Walker received in June 2024 from a representative of the Salvation Army, the organization to which Murphy left his home in his will, as discussed below. Pl.'s Ex. D; Pl.'s Ex. G. Walker attached two versions of the email to the Complaint, with different portions redacted. In the unredacted portions of the emails, read together, the Salvation Army representative (Major Terry Wood) reports that "a neighbor contacted me because they wanted to purchase the home," but "I contact the lawyer from the Senior Law Center and filed complaint against her because I do not feel she was being honest."

3

also references an August 30, 2024 police report for "fraud and identity theft," presumably filed by Walker.  Compl. 4; Pl.'s Ex. E.  Walker alleges someone used his name to obtain a copy of the deed to Murphy's house, then forged Murphy's signature on April 26, 2017.[5]  Compl. 4.

On February 7, 2025, Walker filed the Complaint in this action, asserting claims against Wray for "fraud and healthcare fraud," intentional interference with inheritance, conversion, and "deprivation of property rights" under 42 U.S.C. § 1983.  Walker seeks $250,000 in compensatory damages, consisting of the $165,000 current market value of the 2444 77th Avenue property, the $45,000 value of personal property (antique furniture, personal effects, jewelry, and family heirlooms) removed from the 77th Avenue property, $22,000 stolen from financial accounts and $18,000 in funeral/documentation costs.  *Id.* at 7-8.  He also seeks punitive damages and injunctive relief preventing Wray from claiming any rights to the 2444 77th Avenue property, "[u]sing or distributing copies of fraudulent death certificates," and "[a]ccessing any accounts or property of Mr. Murphy."  *Id.* at 7.[6]

---

Pl.'s Ex. G.  Wood goes on to say, "We gave her $5,000 for work that needed to be done on the home and never heard back."  Pl.'s Ex. D.  Walker interprets the email as indicating that Wray expressed interest in purchasing Murphy's home and received $5,000 from the Salvation Army for work on the home.  *See* Compl. 5.

[5] Exhibit E includes a document memorializing the filing of the police report; however, the contents of the report are not in the record.

[6] This case is the second lawsuit Walker has filed in this district regarding his father's estate.  In the earlier lawsuit, filed in May 2023, Walker sued the SeniorLAW Center and Citizens Bank of Philadelphia for their roles in allegedly depriving him of his inheritance.  *Walker v. Senior Law Ctr.*, No. 23-1741 (E.D. Pa. filed May 3, 2023).  The amended complaint in that action alleged the SeniorLAW Center breached its fiduciary duty to Murphy by failing to change his will to name Walker as the beneficiary, as requested by Murphy in 2011.  Walker also alleged the SeniorLAW Center made false statements to him about his father's estate.  As to Citizens Bank, the amended complaint alleged the bank improperly gave a SeniorLAW Center attorney access to a safety deposit box containing the deed to Murphy's house, cash, savings bonds, and a certificate of deposit, all of which should have gone to Walker.  The earlier lawsuit was dismissed as barred by the applicable statutes of limitation in January 2024.  Walker references the earlier lawsuit in his

After receiving an extension of time to serve Wray, Walker submitted an affidavit of service to the Court indicating that on May 21, 2025, the following documents—"Order; Complaint for Damages and Injunctive Relief; Exhibit A-J"—had been delivered to 2446 77th Avenue, Philadelphia, PA 19150 and accepted by Jamar Wray, Patricia Wray's son. ECF Nos. 5, 6.

On July 18, 2025, Patricia Wray, also proceeding pro se, filed the instant motion to dismiss pursuant Federal Rules of Civil Procedure 9(b) and 12(b)(1), (4), (5), and (6).[7]  Wray seeks dismissal of the Complaint on grounds that (1) Walker lacks standing to bring the claims asserted in this action because he is neither an heir to nor executor of Murphy's estate; (2) his claims are barred by the applicable statutes of limitations; (3) the Complaint fails to state a claim upon which relief can be granted; (4) the fraud claim is not pled with particularity, as required under Federal Rule of Civil Procedure 9(b); and (5) process and service of process were insufficient under Federal Rules of Civil Procedure 12(b)(4) and (5).  Walker filed an opposition to the motion on August 25, 2025.  On September 22, 2025, this case was reassigned to the undersigned district judge.

---

Complaint in this case, characterizing that lawsuit has having been filed against "the other co-conspirators." Compl. 8.  While Walker refers to Wray as a co-conspirator, the Complaint includes no facts linking Wray to the SeniorLAW Center or Citizens Bank in any way.

[7] Wray filed the instant motion to dismiss after receiving a notice of intention to file a motion for default judgment from Walker by mail.  *See* ECF No. 7.  In response to the notice, Wray wrote to the Court, explaining she had not been properly served with the Complaint in accordance with Federal Rule of Civil Procedure 4(e)(2), but intended to respond to the Complaint no later than July 21, 2025.  *Id.*  She also requested that the Court not consider any motion for default judgment. *Id.*  Walker then filed a motion for default judgment, which was denied by the Honorable Mitchell S. Goldberg, to whom the case was then assigned.  ECF Nos. 8, 9.  In his order denying the motion for default judgment, Judge Goldberg directed Wray to respond to the Complaint no later than July 21, 2025.  ECF No. 9.

**LEGAL STANDARDS**

A motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). A Rule 12(b)(1) motion may be brought as "either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). In a facial attack, the defendant "challenges subject matter jurisdiction without disputing the facts alleged in the complaint," so the court must accept the allegations of the complaint as true. *Id.* In contrast, a factual attack challenges the "factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or [by] 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (second alteration in original)). Where, as here, the defendant mounts a factual attack, the court may "weigh and consider evidence outside the pleadings," and the burden is on the plaintiff to prove that jurisdiction "does in fact exist." *Id.* (citations omitted). To establish standing, a plaintiff must show (1) "he suffered an 'injury in fact,' meaning a concrete and particularized invasion of a legally protected interest," (2) "a 'causal connection between the injury and the conduct complained of'"—i.e., "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 346-47 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

6

A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original) (citations omitted). Where, as here, the plaintiff is proceeding pro se, the court must construe the complaint liberally, holding it "to less stringent standards than formal pleadings drafted by lawyers." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). At the motion to dismiss stage, the court may consider "only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230.

Although the statute of limitations is an affirmative defense that ordinarily must be asserted in a responsive pleading, *see* Fed. R. Civ. P. 12(b), a defendant may raise a limitations defense in a Rule 12(b)(6) motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation and internal quotation marks omitted). A court cannot dismiss a case as time-barred, however, unless the limitations bar is "apparent on the face of the complaint." *Id.* (citation and internal quotation marks omitted).

While the generally applicable pleading standard requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a plaintiff

alleging fraud "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). To satisfy this standard, "the complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *Migliore by Migliore v. Vision Solar LLC*, 160 F.4th 79, 90 (3d Cir. 2025) (quoting *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023)).

Under Federal Rule of Civil Procedure 12(b)(4) and (5), a plaintiff may move to dismiss for "insufficient process" or "insufficient service of service of process." A motion to dismiss for insufficient process under Rule 12(b)(4) "challenges noncompliance with provisions regarding the content or issuance of the summons," whereas a motion to dismiss for insufficient service of process under Rule 12(b)(5) "relates to the method of service or the lack thereof." *Kovalev v. Lab. Corp. of Am. Holdings*, No. 22-552, 2023 WL 2163860, at *21 (E.D. Pa. Feb. 22, 2023).

**DISCUSSION**

As discussed below, although the Court cannot resolve the issue of Walker's standing on the existing record, all of his claims are subject to dismissal on the ground that they are time barred, fail to state a plausible claim for relief, or, in the case of the fraud claim, lack the particularity required by Rule 9(b). In addition, Walker has not shown Wray was ever served with a summons. Accordingly, Wray's motion to dismiss will be granted. Walker's fraud, intentional interference, and conversion claims will be dismissed in part with prejudice and in part without prejudice, and Walker will be granted leave to amend to correct the pleading deficiencies identified herein. His § 1983 claim will be dismissed with prejudice.

Wray first argues Walker lacks standing to pursue claims regarding Murphy's estate because he is neither an executor nor a beneficiary of the estate. The Court agrees that insofar as

Walker's fraud, conversion, and § 1983 claims seek to recover for financial harm resulting from Wray's alleged theft of property belonging to Murphy's estate, Walker's standing to pursue those claims depends on whether he is an executor or beneficiary of the estate.[8]  While Walker is not a beneficiary of the estate under the terms of Murphy's will, he may nevertheless be a beneficiary following the named beneficiary's disclaimer of its interest in the estate.  Because the Court resolve the issue on the limited record before it—and because the Complaint is subject to dismissal in its entirety on other grounds—the Court will not dismiss Walker's claims for lack of standing.

In support of her motion to dismiss, Wray has produced copies of Murphy's "Last Will and Testament" as well as "Letters Testamentary" issued to Attorney Karen Buck as executrix of Murphy's estate in June 2015.  Def.'s Ex. B, ECF No. 10.  Both documents were included by Walker as exhibits to the amended complaint in his earlier lawsuit against the SeniorLAW Center, and the Court may properly consider them in resolving Wray's factual challenge to Walker's standing.  *See Davis*, 824 F.3d at 346.  The will appoints the Executive Director of the SeniorLAW Center (i.e., Buck) as executor and gives "all right, title, and interest . . . in the real property located at 2444 77th Avenue, Philadelphia, Pennsylvania, 19510-1821 to The Salvation Army, Eastern Pennsylvania and Delaware Division."  Def.'s Ex. B.  The will also gives "all the rest, residue, and remainder of [Murphy's] property, both real and personal, wheresoever situated," to the same beneficiary.  *Id.*

---

[8] Walker need not be a beneficiary of the estate to have standing to pursue a claim for intentional interference with inheritance as the basis for such a claim is that the testator intended to change his will to provide a benefit to the plaintiff but was thwarted in doing so by the defendant's fraud, misrepresentation, or undue influence.  The Court is also not persuaded Walker lacks standing to the extent he seeks to recover for harms other than the loss of his inheritance stemming from Wray's alleged involvement in Murphy's hospitalization, medical decision-making, and cremation process.

To establish standing, Walker must show his alleged financial injury is "fairly traceable" to Wray's conduct, not to the "independent action of some third party not before the court." *Davis*, 824 F.3d at 346-47.  Under the terms of Murphy's will, Walker cannot demonstrate the required causal connection because he is not a named beneficiary and thus lacks any interest in the property Wray allegedly stole.  In this case, however, the standing analysis is complicated by the fact that, according to the exhibits to the Complaint, the Salvation Army "renounced [its] interest in the estate" in October 2023 after "someone fraudulently gained title to the house, claiming he is the son of Mr. Murphy even though he is not mentioned in Mr. Murphy's Will." Pl.'s Ex. H.  Under Pennsylvania law, "[i]n the event an heir disclaims any portion of the estate to which the heir may be entitled, the interest in the estate disclaimed will pass to the other heirs as though the disclaiming heir had died before the decedent."  19 *West's Pennsylvania Practice, Probate & Estate Administration* § 17:12; *see also* 20 Pa. Cons. Stat. § 6205(b) (providing a disclaimer "shall, for purposes of determining the rights of other parties, be equivalent to the disclaimant's having died before the decedent in the case of a devolution by will or intestacy").  Walker alleges he is Murphy's son and claims to be Murphy's "legal heir."  *See* Compl. 2-3; Pl.'s Opp'n Mot. Dismiss 5, ECF No. 12.  Because the Salvation Army was the sole beneficiary of Murphy's will, it is possible that following the organization's disclaimer of its interest in Murphy's estate, Walker may have standing as an heir under Pennsylvania's intestacy statute.  *See* 20 Pa. Cons. Stat. § 2103(a)(1) (providing that if there is no surviving spouse, a decedent's estate passes first "[t]o the issue of the decedent").  Because the Court cannot resolve the issue on the limited record before it, it will not dismiss the Complaint for lack of standing.

While the Court cannot conclusively resolve the issue of standing at this juncture, the Court agrees the Complaint is subject to dismissal for failure to satisfy the applicable pleading standards and/or because at least some of Walker's claims are clearly time-barred.

Count I of the Complaint alleges Wray committed fraud by "[f]alsifying healthcare documents regarding Mr. Murphy's death," "[m]aking unauthorized representations to healthcare providers," "[u]sing fraudulent death documentation for financial gain," "[i]mpersonating Plaintiff to acquire property rights," and "[c]onceal[ing] critical information about [Murphy's] condition and caus[ing] financial harm to Plaintiff by participating in a conspiracy to deprive Plaintiff of his inheritances."  Compl. 4-5.  To state a claim for fraud under Pennsylvania law, a plaintiff must allege

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).  In addition, to satisfy Rule 9(b), a plaintiff in federal court must describe, inter alia, the "contents of the false representations or omissions, as well as . . . the basis for the statement's falsity."  *Migliore*, 160 F.4th at 90 (citation omitted).  The Complaint's allegations fall short of this standard.

The Complaint alleges Wray's false representations included "[f]alsifying healthcare documents regarding Mr. Murphy's death," an apparent reference Murphy's death certificate.  Compl. 4 (citing Pl.'s Ex. B).  While the death certificate lists Wray as a friend of the decedent and the "informant," the Complaint fails to identify any information therein that is false, much less knowingly so.  The allegations that Wray "[u]s[ed] fraudulent death documentation for financial gain" and "[c]oncealed critical information about [Murphy's] condition," *id.* at 5, are similarly

11

deficient.  The only "death documentation" referenced in the complaint is Murphy's death certificate, and, as noted, the Complaint fails to explain the basis for the assertion that the document is fraudulent.[9]  The Complaint likewise fails to identify any information about Murphy's condition that Wray allegedly concealed.  And while the Complaint alleges Wray's false representations included "[i]mpersonating [Walker] to acquire property rights," *id.*, it includes no facts from which it can be plausibly inferred that it was Wray who impersonated Walker.  Notably, the exhibits to the Complaint contradict this allegation, reflecting that the individual who fraudulently acquired title to Murphy's home was Christopher Cox Williams.

Walker also alleges that Wray "[m]a[de] unauthorized representations to healthcare providers," *id.* at 4, elsewhere elaborating that Wray "[f]alsely represented herself as the 'correct person' to contact" regarding Murphy's medical condition and took various actions (signing medical documents, authorizing end-of-life decisions, and authorizing Murphy's cremation) "without legal authority," *id.* at 3.  Even assuming these allegations satisfy Rule 9(b), they do not support a plausible fraud claim because the Complaint does not allege Walker justifiably relied on Wray's misrepresentations, which were made to the hospital, not Walker.  *See Bonilla v. Am. Heritage Fed. Credit Union*, No. 21-1580, 2021 WL 3612166, at *3 n.5 (3d Cir. Aug. 16, 2021) (noting the lack of "any Pennsylvania authority permitting a clam for intentional or negligent misrepresentation where the plaintiff's injury did not result from the plaintiff's own justifiable reliance"); *Hart v. Gordon*, No. 14-3097, 2024 WL 5047463, at *9 (E.D. Pa. Dec. 9, 2024) ("[A] plaintiff cannot state a claim for fraud based on a third party's reliance on a misrepresentation,

---

[9] Walker also lacks standing to pursue a claim based on this allegation because it refers to Wray's alleged receipt of money for repairs to Murphy's home from the Salvation Army, a transaction from which Walker suffered no identified harm.  Compl. 5 (citing Pl.'s Ex. D).

even when it was made to influence the third party foreseeably to act in a manner detrimental to the plaintiff." (quoting *Westwood-Booth v. Davy-Loewy Ltd.*, No. 97-7539, 1999 WL 219897 (E.D. Pa. Apr. 13, 1999))).

Moreover, any claim based on these allegations is time-barred in any event. Fraud claims in Pennsylvania are subject to a two-year statute of limitations, *Davis*, 824 F.3d at 352 (citing 42 Pa. Cons. Stat. § 5524(7)), which begins to run "as soon as the right to institute and maintain a suit arise." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). In a suit to recover damages for personal injury, this right generally "arises when the injury is inflicted," though under the discovery rule, the statute of limitations is tolled "until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct." *Id.* at 857, 859. To the extent that Walker claims to have been harmed by Wray's misrepresentation of her authority to act for Murphy despite Walker's health care power of attorney, the injury occurred in 2014, when Murphy was hospitalized without consultation with Walker. *See* Compl. 3 (alleging Wray made these misrepresentations "[o]n May 14, 2014").

In opposing the motion to dismiss, Walker invokes the discovery rule, noting that although Wray's name appeared on Murphy's death certificate in 2014, he "did not and could not have known the full extent and nature of [her] involvement until 2024." Pl.'s Opp'n Mot. Dismiss 5. But even if Walker was unaware of Wray's involvement in the effort to steal his father's property until 2024,[10] the Complaint and exhibits show he was (or should have been) aware of Wray's role in the events surrounding his father's hospitalization and death around the time of Murphy's death in 2014. The Complaint alleges it was Wray who informed Walker his father had been hospitalized

---

[10] The information Walker received in 2024 concerns Wray's alleged actions regarding Murphy's home, not his hospitalization. *See* Pl.'s Exs. D-E, G-H.

in May 2014, and Walker learned at that time that his father had died and his body had been sent for cremation. Compl. 3. As Walker acknowledges, Murphy's death certificate—the "healthcare document[]" Wray is alleged to have falsified—identifies Wray as the source of his father's personal information. Pl.'s Ex. B. In support of his allegation that Wray falsely represented herself as the correct contact person regarding Murphy's medical condition, Walker cites to the letter he received from Chestnut Hill Hospital confirming that the Hospital "did notify the correct persons of [Murphy's] passing." Compl. 3 (citing Pl.'s Ex. C). But the letter does not render the claim timely because it is dated October 24, 2022, well over two years before Walker filed the instant action in February 2025.[11]

Because Walker's fraud claim fails to satisfy Rule 9(b) or is time-barred, Count I will be dismissed. Insofar as the claim is time-barred it will be dismissed with prejudice because amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002). The balance of the claim will be dismissed without prejudice.

Count II of the Complaint is a claim for intentional interference with inheritance. As recognized in Pennsylvania, this tort has four elements:

> (1) the testator indicated an intent to change her will to provide a described benefit to the plaintiff; (2) the defendant used fraud, misrepresentation, or undue influence to prevent execution of the intended will; (3) the defendant was successful in preventing the execution of a new will; and (4) but for the defendant's conduct, the testator would have changed her will.

*Fiedler v. Spencer*, 231 A.3d 831, 836-37 (Pa. Super. Ct. 2020) (citing *Cardenas v. Schober*, 783 A.2d 317, 326 (Pa. Super. Ct. 2001)). The Complaint does not plead facts suggesting any of the

---

[11] The same statute of limitations analysis applies to Walker's allegation that Wray committed fraud by "[f]alsifying healthcare documents regarding Mr. Murphy's death," Compl. 4 (citing Pl.'s Ex. B), as Wray's role as "informant" for Murphy's death certificate was apparent on the face of the document, which was issued in August 2014. Pl.'s Ex. B.

foregoing elements, including that Wray played any role in preventing Murphy from executing a will naming Walker as a beneficiary. Instead, Count II simply repeats the allegations that Wray had "[u]nauthorized involvement in death documentation," "conceal[ed] . . . Mr. Murphy's death," and violated Walker's rights to make medical and financial decision on behalf of his father by "withholding medical information and making unauthorized medical decisions regarding [Murphy's] care and death." Compl. 5. Count II also references Wray's alleged "[a]ttempted fraudulent acquisition of property rights." *Id.* Because none of these allegations suggests Wray played any role in preventing Murphy from executing a will naming Walker as a beneficiary,[12] Count II will also be dismissed without prejudice.

Count III of the Complaint asserts a claim for conversion, alleging Wray "wrongfully exercised dominion over Mr. Murphy's property and remains through fraudulent death documentation and misrepresentation." Compl. 6. "The elements of a claim for conversion under Pennsylvania law are: (1) the deprivation of another's right in, or use or possession of, property, (2) without the owner's consent, and (3) without lawful justification." *Ockley v. Radnor Twp.*, 802 F. Supp. 3d 743, 764 (E.D. Pa. 2025) (citation omitted); *see also Universal Premium Acceptance Corp. v. York Bank & Tr. Co.*, 69 F.3d 695, 704 (3d Cir. 1995).

Insofar as this claim pertains to Wray's alleged theft of Murphy's home, the claim fails because "real property cannot be the subject of an action for conversion" under Pennsylvania law. *Sterling v. Redevelopment Auth. of Phila.*, 836 F. Supp. 2d 251, 270 (E.D. Pa. 2011); *see also Devon Drive Lionvill, LP v. Parke Bancorp, Inc.*, No. 15-3435, 2016 WL 7475816, at *18 (E.D.

---

[12] Indeed, in his earlier lawsuit, Walker alleged it was Murphy's attorney at the SeniorLAW Center who ignored Murphy's wish to change his will to name Walker and Walker's son as beneficiaries. The Complaint in this case alludes to the earlier action, referring to Wray as a "co-conspirator[]" of the defendants in that action, but includes no facts suggesting any such conspiracy existed.

Pa. Dec. 29, 2016); *cf. Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 573 (E.D. Pa. 2015) (noting "a cause of action for conversion may be maintained for almost all kinds of *personal property*" (emphasis added) (citation omitted)).  The claim also fails because to maintain a claim for a conversion, a plaintiff must have "actual or constructive possession, or a right to immediate possession, of the property at the time of conversion."  *Star Ins. Co. v. Reginella Constr. Co.*, 685 F. App'x 118, 122 (3d Cir. 2017) (citing *Potts Run Coal Co. v. Benjamin Coal Co.*, 426 A.2d 1175, 1178 (Pa. Super. Ct. 1981)).  The conversion of Murphy's home is alleged to have occurred in April 2017, when the property was transferred via fraudulent deed.  But Walker had no interest in the property (and thus no right to its immediate possession) at that time because the Salvation Army, not Walker, was the sole beneficiary of Murphy's estate and had not yet disclaimed its interest.

The conversion claim will also be dismissed because the Complaint does not plead facts from which it can plausibly be inferred that Wray stole Murphy's property—real or personal.  The Complaint alleges that on April 26, 2017, Wray attempted to transfer the deed to the home using fraudulent death documentation and removed personal property from the home.  Compl. 3.  But, as noted, the exhibits to the Complaint reflect that the transfer of the home on April 26, 2017 was to a different individual—Christopher Cox Williams—who is still listed as owner of property in City of Philadelphia property tax records.  Pl.'s Ex. I; *see also* Compl. 4 (referencing a police report alleging that "someone" used Walker's name to obtain a copy of the deed to Murphy's house and forge Murphy's signature on April 26, 2017, years after his death).  Walker appears to infer Wray's involvement in the theft based on an email from the Salvation Army noting that an unidentified neighbor expressed interest in purchasing Murphy's home after his death and that the Salvation Army gave the neighbor $5,000 for work that needed to be done on the home but "never

16

heard back." *See* Pl.'s Ex. D; Pl.'s Ex. G.  Even assuming the neighbor referenced in the email was Wray, these allegations are insufficient to support a plausible inference that Wray was involved in the theft of the home or its contents.

Insofar as the conversion claim concerns Murphy's remains, it is clearly time-barred. Conversion claims are subject to a two-year statute of limitations under Pennsylvania law.  *In re Mushroom Transp. Co.*, 382 F.3d 325, 336 (3d Cir. 2004).  Although the Complaint does not specify how Wray allegedly "exercised dominion over Mr. Murphy's . . . remains," the Court understands this claim to concern Wray's alleged involvement in authorizing Murphy's cremation. According to the Complaint, Wray authorized the cremation on May 14, 2014, and Walker learned Murphy's body had been sent to the crematory the same day.  Compl. 3.  The Complaint also reflects Walker's knowledge of Wray's involvement in his father's hospitalization as it was Wray who called Walker to notify him Murphy was in the hospital and who provided information for Murphy's death certificate.  Walker's allegation that Wray authorized Murphy's cremation is based on the death certificate and the Hospital's October 2022 letter to him, discussed above. Compl. 3, 6 (citing Pl.'s Exs. B and C).  But Walker was aware of these documents more than two years before he filed this action in February 2025.  Count III will therefore be dismissed.  The claim for conversion of Murphy's home and remains will be dismissed with prejudice because amendment would be futile.  The claim for conversion of Murphy's personal property will be dismissed without prejudice.

In Count IV, Walker asserts a § 1983 claim for deprivation of property rights through misuse of state authority without due process.  The deprivation is alleged to have occurred through Wray's "[i]nterference with Plaintiff's Power of Attorney rights" and "[u]nauthorized disposal of [Murphy's] remains using fraudulent state documents," as well as through her "[a]ttempted

17

property transfer using false state certifications." Compl. 6-7. For the same reasons explained above, any claim based on Wray's alleged interference with Walker's power of attorney rights and disposal of Murphy's remains is barred by the two-year statute of limitations applicable to § 1983 claims in Pennsylvania. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) ("The statute of limitations for a § 1983 claim arising in Pennsylvania is two years."). And insofar as the claim is based on Wray's alleged attempted property transfer, it fails because the Complaint does not plead facts from which it can plausibly be inferred that it was Wray who stole Murphy's property.

Walker's § 1983 claim is also subject to dismissal because the Complaint does not plausibly allege Wray took any of the challenged actions under color of state law. "[T]o state a claim of liability under § 1983, [a plaintiff] must allege that she was deprived of a federal constitutional or statutory right by a state actor." *Leshko v. Servis*, 423 F.3d 337, 338 (3d Cir. 2005). To determine whether a private actor's conduct constitutes state action for purposes of § 1983, courts consider three broad tests:

> (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."

*Kach*, 589 F.3d at 646 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (alteration in original)). The principal question is "whether there is 'such a close nexus between the State and *the challenged action* that seemingly private behavior may be fairly treated as that of the State itself.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017).

Walker alleges the following actions by Wray constitute state action: her "[u]nauthorized completion of [Murphy's] official Pennsylvania death certificate[]," her "[f]alse representations to state-licensed healthcare facilities," and her "[u]se of fraudulent state documents for property

18

transfers." Compl. 6. The Court disagrees. These actions concern misrepresentations Wray allegedly made in official state documents or to a "state-licensed" entity. There is no allegation that in making the misrepresentations, Wray exercised powers that are traditionally the exclusive prerogative or acted in concert with state officials or entities, nor is there any allegation that state actors "exercised coercive power" over or provided "significant encouragement" for the misrepresentations. *Kach*, 589 F.3d at 648. And the mere fact that the misrepresentations were made to state entities does not convert her private conduct into state action. *Cf. Eleuteri v. Eleuteri*, 457 F. App'x 210, 211-12 (3d Cir. 2012) (holding litigants and their attorney did not act under color of state law for purposes of § 1983 by making fraudulent misrepresentations to a state court); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 278 (3d Cir. 1999) (holding "an attorney does not become a state actor simply by employing the state's subpoena laws"). Because Wray is not a state actor, any amendment of this claim would be futile. Count IV will therefore be dismissed with prejudice.

Finally, Wray argues the case should be dismissed for insufficient process and/or insufficient service of process under Rule 12(b)(4) and (5) because Walker did not serve her with a summons or an "actual filed copy of the Complaint"—i.e., a complaint bearing "markings that would indicate that it actually was filed." Pl.'s Mot. Dismiss 12, ECF No. 10. In opposing the motion, Walker maintains Wray was properly served with the Complaint, which was left at her home with her adult son,[13] but does not address Wray's assertion that she was not served with a summons, as required by Rule 4. *See* Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a

---

[13] *See* Fed. R. Civ. P. 4(e)(2)(B) (providing "an individual . . . may be served in a judicial district of the United States by . . . leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there").

copy of the complaint."). The affidavit of service supports Wray's position, as it reflects service of an "order," the Complaint, and the exhibits to the Complaint, but does not mention a summons.[14] ECF No. 6. "Where a challenge has been raised as to the validity of service, the burden lies with the plaintiff to prove validity by a preponderance of the evidence." *Kovalev*, 2023 WL 2163860, at \*21. Because Walker has produced no evidence that Wray was served with a summons, it appears Wray was never properly served. "Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). Where, as here, there is a "reasonable prospect that service may yet be obtained," a district court "should, at most, quash service, leaving the plaintiffs free to effect proper service." *Id.* The Court will follow this procedure here. If Walker elects to file an amended complaint in accordance with this Memorandum, he must request issuance of an alias summons and properly serve Wray with the summons and amended complaint.

**CONCLUSION**

For the reasons set forth above, Wray's motion to dismiss will be granted. Walker's fraud claim (Count I) will be dismissed with prejudice insofar as it is based on Wray's alleged falsification of Murphy's death certificate and unauthorized representations to healthcare providers in 2014; the balance of the claim will be dismissed without prejudice. Walker's intentional interference with inheritance claim (Count II) will be dismissed without prejudice. Walker's

---

[14] Walker filed a second affidavit of service in support of his notice of intent to file a motion for default judgment. On that affidavit, the process server checked a box stating he "personally served the summons" on Wray at her home on June 21, 2025. ECF No. 8 at 4. However, the document elsewhere specifies that the documents served at that time were the notice of intent to file motion for default judgment and the complaint and exhibits. *Id.* The summons is not included in the list of documents served. *Id.*

conversion claim (Count III) will be dismissed with prejudice insofar as the claim alleges conversion of Murphy's home and remains and without prejudice insofar as it alleged conversion of Murphy's personal property.  Walker's § 1983 claim (Count IV) will be dismissed with prejudice.  Walker will be granted leave to amend as to those claims dismissed without prejudice.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.